Citation Nr: 1826257 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 11-04 229 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for a right ankle disorder, to include as secondary to a service-connected right knee disability.

2. Entitlement to service connection for a left knee disorder, to include as secondary to a service-connected right knee disability.

3. Entitlement to a rating in excess of 10 percent for chondromalacia of the right patella. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

K. McDonald, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from September 1978 to July 1986. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO) which denied entitlement to the benefits currently sought on appeal.

The Veteran appeared before the undersigned Veterans Law Judge in a videoconference hearing in June 2015 to present testimony on the issue on appeal. 

This appeal was subject to a prior remand by the Board in July 2015 to ensure compliance with due process requirements. The evidentiary record has been adequately developed in substantial compliance with all prior Board remand instructions regarding the claims of service connection for a right ankle disability and an increased rating for the Veteran's right knee disability, and has been returned to the Board for further appellate review. Stegall v. West, 11 Vet. App. 268 (1998). Although the Board finds that the requested development has been completed in substantial compliance with the Board's prior remand instructions, opposing arguments have been submitted by the Veteran's representative in this regard, particularly as to the specialty area of practice of the December 2017 VA examiner. These arguments are explicitly addressed in the duty to assist analysis in the decision below. 

After receiving additional medical evidence requested as a result of the Board's July 2015 remand, the Agency of Original Jurisdiction (AOJ) granted service connection for a left ankle disability effective December 30, 2008. The grant of entitlement to service connection is considered a full grant of the benefits sought on appeal for the left ankle condition. The Board acknowledges the February 2018 argument put forth by the Veteran's representative that the Veteran has not voiced his satisfaction with the granting of service connection with a noncompensable (zero percent) rating assigned, and has not withdrawn his appeal on the issue, thus the Representative argues that it should be presumed that the Veteran is still seeking the maximum amount of benefits applicable under regulation and law. However, the United States Court of Appeals for the Federal Circuit has held that where an appeal concerns the denial of service connection for a given disability, that appeal cannot, by the nature of the appeal itself, concern the down-stream element of compensation level. Where an initial Notice of Disagreement (NOD), such as that issued in May 2010 in this case, concerns only the question of service-connection, a second NOD would be required after the grant of service connection to disagree with the downstream element of the initial compensation level assigned to the now service-connected disability. See Grantham v. Brown, 114 F.3d 1156, 1158 (1997). 

In this instance, as the rating decision assigning the initial rating for the Veteran's left ankle disability occurred in December 2017, the Veteran may submit a NOD with this decision as to the initial rating within one year from issuance of the decision. In other words, there is sufficient time remaining within the applicable appeals period to initiate disagreement with the initial rating assigned for the left ankle disability. If the Veteran wishes to pursue such an appeal, he must submit a VA Form 21-0958 Notice of Disagreement. The Board does not have jurisdiction to consider the downstream issue of a higher initial rating for this disability at present. 

The issue of entitlement to service connection for a left knee disorder is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran does not have a currently diagnosed right ankle disability.

2. The Veteran's service-connected right knee chondromalacia is manifested by arthritis with credible lay evidence of pain on motion of the knee. There is no credible evidence of other impairment of the right knee such as recurrent subluxation, lateral instability, limitation of motion, or a semilunar cartilage disorder. 


CONCLUSIONS OF LAW

1. The criteria to establish service connection for a right ankle disability are not met. 38 U.S.C. §§ 1131, 1154, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017). 

2. The criteria for a right knee disability rating in excess of 10 percent are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1-4.7, 4.10, 4.14, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5261.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA's duties to notify and assist Veterans in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). 

In this case, neither the Veteran nor his representative has referred to any explicit deficiencies in the duty to notify the Veteran. In February and September 2009, prior to the RO's adjudication of these claims, the Veteran was notified of the information and evidence necessary to substantiate his claim for benefits. This notice included information and evidence that VA would seek to provide and that which the Veteran was expected to provide. The duty to notify has been fulfilled. 

With respect to the duty to assist the Veteran, the Veteran's representative asserts that the December 2017 VA examination is inadequate as the examiner lists his primary area of practice as internal medicine, and his secondary area of practice as emergency medicine on his medical licensing information with the Medical Board of California. Written Brief Presentation, February 2018. The Veteran's representative argues that this is inadequate compliance with the Board's July 2015 remand directive that "the Veteran should be afforded a supplemental VA orthopedic examination to address the claim of both direct and secondary service connection for claimed left ankle, right ankle, and left knee disabilities." The representative asserts that this directive required "an orthopedic physician," presumably an orthopedist or orthopedic surgeon, to conduct the examination requested by the Board. The Board does not find this to be the case. Instead, the term orthopedic, as used by the Board in its remand directive, is an adjective modifying the type of examination required, not modifying the type of medical provider necessary, and should not be construed as a specification of a specialty practice area necessary in the practitioner's licensure. 

The term "orthopedic" is defined in relevant part as "pertaining to the correction of deformities of the musculoskeletal system." Dorland's Illustrated Medical Dictionary 1359 (31st ed. 2007). By referring to an orthopedic examination, the Board merely specified that the examination must pertain to the claimed disabilities of the musculoskeletal system and an appropriate orthopedic disability benefits questionnaire (DBQ) format should be used. The Board did not specify that a particular medical specialist conduct that examination. Indeed, under 38 C.F.R. 
§ 3.159(a)(1) (2017), "Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." The December 2017 examiner, a licensed medical doctor, is qualified to offer medical diagnosis, statement and opinion by nature of his education, training and experience in medicine. A requirement that the examiner have a particular specialty in orthopedic surgery was not required by the Board, and cannot be retroactively created by the representative's argument. Furthermore, even if particular knowledge were required as to the musculoskeletal system, a trained medical doctor, particularly one with a sub-specialty in emergency medicine, would be capable of addressing the general function and articulation of the musculoskeletal system as addressed in the examination here. The Board finds substantial compliance with the Board's remand directive and that the examination provider is of adequate medical expertise to render the requested opinion. The duty to assist is fulfilled. 

The Board has reviewed all of the evidence within the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the given claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-130 (2000).

Service Connection

Service connection generally requires (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) competent evidence of a causal relationship, or nexus, between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303; see Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be granted for a disability which is proximately due to or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 1 Vet. App. 439 (1995). To establish secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) competent evidence establishing a medical relationship between the service-connected disability and the current disability for which compensation is sought. See Wallin v. West, 11 Vet. App. 509 (1998). The necessary medical relationship may be shown by evidence that the nonservice-connected disability is proximately due to or the result of a service-connected disability, or that the nonservice-connected disease or injury increased in severity due to a service-connected disability. 38 C.F.R. § 3.310. The latter circumstance is known by the legal term of "aggravation." 38 C.F.R. § 3.310(b). 

The competency of evidence is a legal concept determining whether testimony may be heard from a particular witness on a given subject. Any claimant before VA is generally competent to provide testimony concerning factual matters of which he or she has firsthand knowledge, to include experiencing physical symptoms such as pain. See Washington v. Nicholson, 19 Vet. App. 362 (2005) (holding lay person competent to report symptoms of a hip disorder including pain, an observably rotated foot, and a limp). 

Under certain circumstances, lay statements may support a claim by showing the occurrence of lay-observable events or the presence of disability, or symptoms of disability that are capable of lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994) (finding lay evidence is competent if provided by a person with knowledge of the facts or circumstances and conveys matters that can be observed and described by a person without specialized knowledge or training); 38 C.F.R. § 3.159(a)(2) (2017). However, although a lay person can provide an account of matters they actually observed, or are within the realm of their own personal knowledge, a lay witness cannot offer evidence that requires specialized medical knowledge such as causation or etiology of a disease or injury. Layno v. Brown, 6 Vet. App. 465. 

In the present case, the Veteran seeks service connection for a right ankle disability. Service treatment records confirm the in-service occurrence of a mild right ankle sprain in June 1985, and instances of a "twisted" right ankle in December 1983 and January 1980. Thus, the in-service element necessary for service connection is met. However, there is no competent evidence of a current right ankle disability. 

Although the Veteran credibly asserts that both of his ankles may swell when he walks for long distances and he has a tendency of twisting his ankles such that he wears a support brace on his ankles whenever he goes for a walk, the Veteran is not competent to render a medical diagnosis of the right ankle condition as he does not have the specialized medical training or knowledge necessary for this determination. 

Instead, a VA treatment notation from August 2016 found no swelling, no edema, and no erythema of either ankle. Upon examination in December 2017, the examiner personally examined the Veteran and found no diagnosed disability of the right ankle. The right ankle exhibited full (normal) range of motion, exhibited no loss of function or range of motion after repetitive use, no reduction in muscle strength, and no suspected instability or dislocation. No right ankle pain was noted upon examination. Both the physical examination and x-rays of the right ankle were normal. The examiner found no current right ankle condition to make a diagnosis of any pathologic finding or event. Congress has specifically limited entitlement to compensation for service connected disease or injury to cases where incidents have resulted in a disability. 38 U.S.C. § 1131. In the absence of competent evidence of a right ankle disability present, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

Finally, after careful consideration of all evidence available in a given case, any reasonable doubt, meaning a point where there is an approximate balance of positive and negative evidence regarding any issue material to the determination (a legal condition called equipoise), VA will resolve that doubt in the Veteran's favor. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Alternatively, to deny a claim on its merits, the evidence must weigh against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996). In this instance, the evidence weighs against the claim, and service connection for a right ankle disorder must be denied. 

Increased Rating

Disability evaluations are determined by application of the VA Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The ratings percentages contained in the Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from service-connected disability and the residual limitations that result in civil occupations. Separate diagnostic codes (DC) identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. 

In determining the appropriate evaluation in a given case, many different statutes, regulations, and case law applicable to VA govern. Each disability must be viewed in relation to its history. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. When after careful consideration of all available data, a reasonable doubt arises regarding the degree of disability, such doubt must be resolved in favor of the Veteran. 38 C.F.R. § 4.3. Every element in any way affecting the probative value to be assigned to the evidence in each individual claim must be thoroughly and conscientiously studied so that decisions will be equitable and just. 38 C.F.R. § 4.6. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

In determining the disability evaluation, VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.40 covering functional loss and § 4.45 covering joints, however, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

The intent of the rating schedule is to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. With any form of arthritis, painful motion is an important factor of disability and any facial expression such as wincing, which may occur on pressure or manipulation during examination of an affected joint, is to be carefully noted if present. 38 C.F.R. § 4.59.

Under VA regulations, evaluation of the same disability or the same manifestations of disability under multiple diagnoses (i.e., pyramiding) is prohibited. 38 C.F.R. 
§ 4.14. To do so would overcompensate the Veteran for his loss of earning capacity. See Brady v. Brown, 4 Vet. App. 203, 206 (1993). However, separate disabilities arising from a single disease entity are to be rated separately. 38 C.F.R. § 4.25. Specifically, when the symptomatology is distinct and separate, an additional rating is allowed. The critical inquiry in making such a determination is whether any of the disabling symptomatology is duplicative or overlapping.

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. In this case, the Veteran's right knee disability is evaluated under DC 5010-5261, indicative of a rating for arthritis that is based upon limitation of extension. 

DC 5010 for arthritis due to trauma that is substantiated by x-ray findings is to be rated as degenerative arthritis. Degenerative arthritis is to be rated based upon the limitation of motion under the appropriate diagnostic code for the joint involved. Notably, however, where limitation of motion of the specific joint (i.e., right knee) is noncompensable under the appropriate diagnostic code, a rating of 10 percent is for application for each such major joint. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 

Here, there is no objective confirmation of limitation of motion of the right knee upon examination during the current appeals period. VA examination, December 2017 (showing full range of motion). However, as the Veteran's knee has been diagnosed with arthritis by diagnostic imaging studies, and the Veteran credibly reports occasional painful motion on use of the knee, the RO has assigned a 10 percent rating under 38 C.F.R. § 4.59. See also VA examination, May 2003. 

The Board has considered all other ratings available for disabilities of the knee and leg to determine if the Veteran's impairment would qualify for a higher evaluation under any other pertinent diagnostic code. The Board will now proceed through an analysis of the relevant diagnostic codes in order. 

First, DC 5256 rates based on the presence of ankylosis, or immobility of the joint. As the Veteran has shown movement in his knee joint throughout the appellate period, this code is inapplicable. 

The diagnostic criteria applicable to recurrent subluxation or lateral instability is found at 38 C.F.R. § 4.71a, DC 5257. Under that code, slight impairment is assigned a 10 percent rating, moderate impairment a 20 percent rating, and severe impairment a 30 percent rating. The Veteran has previously described some pain with buckling in the right knee, but no locking or swelling. VA examination, May 2003. The Veteran has not described experiencing recurrent subluxation, or dislocation of the kneecap. Upon examination in December 2017, there was no pain noted on examination, no objective evidence of localized tenderness or pain on palpation of the joint, and no evidence of crepitus in the right knee. The examiner performed joint stability testing and found anterior, posterior, medial, and lateral stability all to be normal for the right knee. Thus a rating under DC 5257 is not warranted. 

DC 5258 allows for a 20 percent rating for dislocated semilunar cartilage (which includes a torn meniscus) where there are frequent episodes of "locking," pain, and effusion into the joint. DC 5259 provides a 10 percent rating where there is symptomatic removal of semilunar cartilage. While this Veteran has undergone arthroscopic repair of a medial meniscal tear of the left knee, there is no evidence of meniscal impairment in the right knee at this time. VA examination, December 2017. As such, ratings under DCs 5258 and 5259 are not warranted. 

The next two diagnostic codes relate to limitation of motion of the knee joint in flexion and extension. Normal range of motion of the knee joint is from 0 degrees extension (i.e. leg straight out) to 140 degrees flexion (i.e. bent knee). 38 C.F.R. 
§ 4.71, Plate II. 

Under DC 5260, when flexion of the leg is limited to 60 degrees, a noncompensable rating is warranted. When flexion is limited to 45 degrees, a 10 percent rating is warranted. Greater limitation in flexion warrants higher percentage ratings, up to 30 percent. DC 5261 rates based on limitation of extension. This code provides that when extension is limited to 5 degrees, a noncompensable rating is assigned. Extension limited to 10 degrees warrants a 10 percent rating. Greater limitation in extension warrants higher percentage ratings, up to 50 percent. In this case, the Veteran's right knee is not shown to have any limitation of motion upon examination during the present appeals period. The December 2017 examiner found full normal range of motion from zero to 140 degrees. Therefore, a rating in excess of 10 percent is not warranted based upon limitation of motion. 

Additional diagnostic codes referable to the knee are found at DC 5262 and 5263. However, as the evidence of record does not demonstrate impairment of the tibia or fibula, or genu recurvatum, these diagnostic codes are inapplicable to the Veteran's disability. 

As such, the rating schedule provides no basis by which this Veteran's right knee disability warrants a rating in excess of 10 percent. The Veteran has not raised any other issues related to the appropriate rating of the right knee disability, nor have any other rating matters been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

The preponderance of the evidence is against the Veteran's claim, and the benefit-of-the-doubt doctrine is inapplicable. 38 C.F.R. § 4.3. The Board finds that there is no evidence to warrant a higher right knee rating on any grounds at this time. 




ORDER

Service connection for a right ankle disorder is denied. 

A rating in excess of 10 percent for chondromalacia of the right patella is denied.


REMAND

Additional evidentiary development is required before the Board may address the merits of the Veteran's claim of service connection for a left knee disorder.

The Veteran's service treatment records reflect a number of left knee complaints during service, and more recent medical records reflect treatment and surgical repair of left knee disorders during the appellate period. Thus, the remaining element that is critical to the Veteran's case is that of nexus, or a medical relationship between the current left knee problems and the Veteran's military service. 

In this respect, the December 2017 VA medical opinion is inadequate for the purposes of a service connection determination. Specifically, the examiner did not provide a medical rationale, or reasoning for the nexus determinations reached. In consideration of direct service connection, the examiner states "It is illogical to assume that the Veterans left medial meniscal tear is [a] result of events which took place in service some 30 years earlier." The examiner provides no medical reason why such would be illogical, and as such there is no basis upon which the Board may reach a determination as to the probative value of this opinion. Similarly, on a secondary service connection determination, the examiner states "No mechanism is known to explain adequately the Veteran's current left knee condition as resulting from a contralateral nervous connected right knee condition." No medical explanation or rationale is provided for this opinion. 

The United States Court of Appeals for Veterans Claims has held that a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (finding that a medical opinion must support its conclusion with an analysis that the Board can consider and weigh against any contrary opinions). In the absence of a medical rationale provided for the service connection determination opinions above, the medical opinion is inadequate and an addendum opinion is required. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

Accordingly, the case is REMANDED for the following action:

1. Obtain any recent VA treatment records not currently associated with the claims file.

2. Send the Veteran's electronic claims file to the examiner that conducted the December 2017 examination, if available. Obtain an addendum opinion that includes a clear and complete medical rationale for the opinions expressed in regard both to the relationship between the Veteran's current left knee disorder and his military service, including the left knee complaints therein, as well as a rationale for his opinion regarding the Veteran's claim that his service-connected right knee disability has caused or aggravated his left knee condition. 

If the December 2017 examiner is not available, the claims file may be sent to another examiner. The Veteran need not be personally re-examined unless the examiner determines this to be necessary. The examiner is free to reach a different conclusion or opinion than the prior examiner, but the critical element is that the addendum opinion must provide the medical reasoning or rationale for any conclusion reached. In the event that the file is sent to a different provider, the questions that must be answered are as follows:

a. Is it at least as likely as not (probability of 50 percent or more) that any current left knee disorder was incurred in active service, or is otherwise attributable to this Veteran's service? Why or why not?

b. Is it at least as likely as not (probability of 50 percent or more) that any current left knee disorder was caused by the Veteran's service-connected right knee disorder, to included straining the Veteran's left knee to give more balance due to the right knee disability, as the Veteran has contended in his June 2015 hearing testimony? Why or why not? 

c. Is it at least as likely as not (probability of 50 percent or more) that any current left knee disorder was aggravated (increased in severity) as a result of the service-connected right knee disability, including the allegation of additional strain described by the Veteran above? Why or why not? 

A clear and complete rationale for any opinions or conclusions expressed should be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board.

3. Undertake any other development deemed warranted, and then readjudicate the Veteran's claim on the basis of the additional evidence. If the benefit sought on appeal is not granted, provide the Veteran and his representative with a Supplemental Statement of the Case, then return the appeal to the Board. 


The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
K.J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs